**THORPE SHWER, P.C.**
Bradley D. Shwer (No. 022696)
Sara R. Witthoft (No. 023521)
3200 North Central Avenue, Suite 1560
Phoenix, Arizona 85012-2441
Telephone: (602) 682-6100
Email: docket@thorpeshwer.com
Email: bshwer@thorpeshwer.com
Email: switthoft@thorpeshwer.com

**Attorneys for Plaintiff Treasure Global, Inc.**

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Treasure Global, Inc., | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| NameCheap, Inc., a Delaware Corp. dba NameCheap and Whois Guard Protected; and John Doe 1, | |
| Defendants. | |

Plaintiff Treasure Global Inc. ("TGI" or "Plaintiff"), by and through its attorneys, Thorpe Shwer, P.C., alleges as follows for its Complaint against Defendants NameCheap, Inc., a Delaware Corp. dba NameCheap and Whois Guard Protected ("NameCheap" or "Defendant") and John Doe 1 (NameCheap and John Doe 1, collectively, "Defendants").

### NATURE OF THE ACTION

1. Plaintiff seeks injunctive relief from Defendants to accomplish the return of its unlawfully stolen Internet domains <treasuregroup.co> (<zcity.io> and <treasuregroup.co>, together, the "Domains"), compensation for loss of use of this property, Plaintiff's costs in bringing this action, and Plaintiff's reasonable attorneys' fees as permitted by statute.

. . .

10038770.1

# PARTIES

2. Plaintiff is a Delaware corporation organized under Delaware law, with its principal offices in New York, New York. TGI, through its subsidiary, ZCity Sdn. Bhd., offers payment processing and e-commerce services. The Domains at issue are Plaintiff's property.

3. Upon information and belief, NameCheap is a Delaware corporation with its principal place of business located at 4600 East Washington Street, Suite 300, Phoenix, Arizona doing business under the names NameCheap and Whois Guard Protected (hereinafter, "Whois Guard"). NameCheap is a domain name registration company. NameCheap is the registrar of the Domains.

4. Defendant John Doe 1 is an unknown individual or entity who has unlawfully stolen the Domains.

# JURISDICTION

5. Plaintiff seeks relief under 15 U.S.C. § 1125(d) (the federal Cyberpiracy Statute). Accordingly, Plaintiff invokes this Court's federal question subject matter jurisdiction under 28 U.S.C. § 1331, and its jurisdiction over trademark laws conferred by 28 U.S.C. § 1338(a).

6. Plaintiff further seeks relief under state law claims for conversion of personal property. Pursuant to 28 U.S.C. § 1367(a), this Court is entitled to exercise its supplemental jurisdiction over such claims because all such claims are related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7. This Court has personal jurisdiction over Defendant Namecheap as it maintains its principal place of business in Arizona and regularly does business in the State of Arizona.

8. Further, Namecheap has consented to the jurisdiction of this Court under Section 29 of its Registration Agreement (as set forth on the website of Namecheap).

. . .

10038770.1

THORPE SHWER, P.C.

# GENERAL ALLEGATIONS

### A. Background on Plaintiff and the Domains

9. Since February 5, 2020, TGI has owned the Internet domain <zcity.io>, and since July 8, 2020, TGI has owned the Domains. NameCheap is TGI's domain registrar for the Domains. Through these Domains, TGI operates, respectively, websites hosted at <https://zcity.io> and <https://treasureglobal.co> (together, the "Websites"). Moreover, TGI's ZCITY app (the "App") is tightly integrated with the <zcity.io> domain.

10. TGI has a clear history of using the Domains for legitimate business purposes. For instance, since 2020, the Domains have been featured in TGI's product packaging, terms of service and marketing content. Moreover, since approximately July 8, 2020, the Domains have been registered to TGI's business e-mail accounts. Lastly, since creation of the Domains in 2020, TGI has actively used the Domains in commerce and recognized by its customers and partners. In sum, TGI has actively been using the Domains to conduct its ongoing business, and keeping such Domains is critical to TGI's business operations and economic success.

11. Since July 2020, TGI's ownership of the Domains has been absolute and title to such property has been in the name of TGI.

12. TGI has not abandoned its Domains or any property right in the Domains, nor has it intended to do so. TGI was never divested of exclusive ownership of the Domains.

### B. The Theft

13. On or about May 9, 2025, due to a security breach at NameCheap, TGI's account was compromised, and as a result, Defendant John Doe 1, a hacker, gained unauthorized access to TGI's account and stole the Domains.

14. Upon information and belief, Defendant John Doe 1 changed the password for the account with NameCheap, making it impossible for Plaintiff to gain access to the account or the Domains.

15. TGI lost access to the Domains. Thereafter, it provided proof of ownership

3

to Namecheap, but still was not able to gain access to the Domains nor the administrative account associated with the Domains.

16. On May 15, 2025, TGI again attempted to contact NameCheap regarding loss of access to the Domains, but was not successful in gaining access to the Domains nor the administrative account associated with the Domains.

17. NameCheap is a depository and/or bailee, and owes statutory and common law duties to TGI with respect to the Domains and similar property.

18. By allowing Defendant John Joe 1 access to TGI's account, and by failing to protect adequately TGI's property, NameCheap was negligent and/or grossly negligent.

19. NameCheap knew, or reasonably should have known (due to multiple indicators as well as TGI advising of it of same) that there had been a security breach.

20. By failing to establish procedures and protocols for the prompt return of hacked domain names, such as the Domains, to rightful owners, such as Plaintiff, NameCheap was negligent and/or grossly negligent, and is causing TGI to suffer great monetary as well as non-monetary damages.

21. Prior to the security breach of the Domains, while TGI's property was entrusted to NameCheap for safekeeping, TGI clearly and unmistakably expressed its intention to NameCheap and its representatives *not* to abandon its property.

22. At no time did Plaintiff authorize NameCheap, or any agent, representative or entity acting on behalf of NameCheap, to release the Domains to any other party.

23. NameCheap failed to provide Plaintiff with appropriate notice, nor an opportunity to be heard by a neutral and impartial adjudicator, before depriving Plaintiff of its valuable property, including the Domains.

24. At the time of the security breach of the Domains, Plaintiff's account with NameCheap was paid in full, and was not due to expire, nor was a renewal payment due.

25. NameCheap failed to protect Plaintiff's property, including the Domains, from this known or obvious threat of hacking.

26. Because NameCheap permitted the theft of TGI's property, the Websites,

4

App and Plaintiff's business e-mail accounts, all of which are associated with the Domains, have been shut down.

27. As a result, Plaintiff's principal business activities have been adversely affected insofar as those activities are largely dependent on the operation and proper functioning of the Websites, App and business e-mail accounts.

28. TGI provided NameCheap with information and documentation that would convince any reasonable person that Plaintiff's property, including the Domains, had been stolen. Notwithstanding, NameCheap has failed to take appropriate action, including properly restoring the *status quo ante*.

29. NameCheap should have detected the fraudulent activity and/or protected its data to prevent the theft of Plaintiff's property, including the Domains.

30. Despite Plaintiff writing to Defendant, informing them of the security breach, and demanding a return of Plaintiff's property, including the Domains, or restoring even on a temporary basis access to TGI's account with Defendant, NameCheap refused the request absent a Court order.

31. Defendant has the power and authority to restore the *status quo ante*, but it has refused to do so absent a Court order. As such, Plaintiff is constrained to bring this action and name NameCheap as a Defendant.

32. Defendant's failure to mitigate TGI's damages is evidence of an intention to harm Plaintiff or a reckless disregard for the harm visited upon Plaintiff.

33. Defendant John Doe 1 has intentionally held Plaintiff's property hostage, including the Domains.

34. The unauthorized transfer of the Domains to Defendant John Doe 1, and any other unidentified entities, completely deprived Plaintiff of control over the Domains, by placing the control to Defendant John Doe 1, to the exclusion of TGI.

35. Based on the foregoing, NameCheap and Defendant John Doe 1 have caused Plaintiff to suffer monetary damages, in an amount not yet fully ascertainable, and non-monetary damages.

10038770.1

# COUNT I

## STATE LAW CLAIM (AGAINST DEFENDANT JOHN DOE 1)

## FOR CONVERSION

36. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-35, as if set forth fully herein.

37. Plaintiff is the exclusive and rightful owner of the Domains, which are Plaintiff's personal property.

38. Defendant John Doe 1 has tortiously converted the personal property of Plaintiff, namely, the Domains.

39. Defendant John Doe 1 has committed the tort of conversion willfully, knowingly, intentionally and with a bad faith intent to profit.

40. Plaintiff has the legal right to an order compelling Defendant John Doe 1 to return Plaintiff's property.

41. Plaintiff has the legal right to full compensation from Defendant John Doe 1 for loss of use of its property that has occurred throughout the period of time that Defendant John Doe 1 has refused to return it.

42. Plaintiff has the legal right to full compensation from Defendant John Doe 1 for any harm or damage to the Domains, the Websites or App, or the reduction in the commercial value of any thereof, that has occurred as a result of the actions of Defendant John Doe 1 during the time of the conversion.

43. Plaintiff prays for this compensation, which is not yet readily ascertainable, and for its costs and attorneys' fees incurred in prosecuting its claims for the return and recovery of its property.

## PRAYER FOR RELIEF ON COUNT I

WHEREFORE, Plaintiff prays for all of the following relief, and for such other and further relief at law or in equity that the Court may deem just and proper:

1. Monetary damages, in an amount to be determined at trial;
2. A court order compelling Defendant John Doe 1 and/or any relevant domain

10038770.1

1  name registrar to take any and all steps to return the Domains to Plaintiff;

2      3.    The costs of this action;

3      4.    Disgorgement of all of Defendant John Doe 1's profits;

4      5.    Compensation from Defendant John Doe 1 for Plaintiff's loss of use of the Domains during the period of Defendant John Doe 1's refusal to return it;

6      6.    Compensation for Defendant John Doe 1 for any diminution in the value of the Domains resulting from Defendant John Doe 1's actions during the period of time the Domains have not been returned;

9      7.    Reasonable attorneys' fees; and

10     8.    A permanent injunction against any further misconduct.

## COUNT II
## STATE LAW CLAIM (AGAINST NAMECHEAP)
## FOR AIDING AND ABETTING CONVERSION

44. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-43 as though fully set forth herein.

45. Plaintiff is the exclusive and rightful owner of the Domains, and the Domains are Plaintiff's personal property.

46. Namecheap, as the domain registrar for the Domains, is aware, or substantially aware, that Defendant John Doe 1 tortiously converted the personal property of Plaintiff, namely, the Domains.

47. NameCheap substantially assisted and/or encouraged Defendant John Doe 1 in its conversion of the Domains by (i) handing over TGI's property to the control of Defendant John Doe 1 without the permission, consent or authorization of Plaintiff; (ii) allowing Defendant John Doe 1 to take control of the Domains without the permission consent or authorization of Plaintiff; and (iii) refusing to return the Domains to TGI, when requested by TGI to do so.

48. Plaintiff has the legal right to an order compelling NameCheap to return its property.

7

49. Plaintiff has the legal right to full compensation from Namecheap for loss of use of its property that has occurred throughout the period of time that Namecheap has refused to return it.

50. Plaintiff has the legal right to full compensation from Namecheap for any harm or damage to the Domains, the Websites or App, or the reduction in the commercial value of any thereof, that has occurred as a result of the actions of Namecheap during the time of Defendant John Doe 1's conversion.

51. Plaintiff prays for this compensation, which is not yet readily ascertainable, and for its costs and attorneys' fees incurred in prosecuting its claims for the return and recovery of its property

## **PRAYER FOR RELIEF ON COUNT II**

WHEREFORE, Plaintiff prays for all of the following relief, and or such other and further relief at law or in equity that the Court may deem just and proper:

1. Monetary damages, in an amount to be determined at trial; and

2. A court order compelling NameCheap to take any and all necessary steps to return the Domains to Plaintiff.

## **COUNT III**

## **FEDERAL CYBERPIRACY CLAIM, 15 U.S.C. § 1125(d)**

## **(AGAINST ALL DEFENDANTS)**

52. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-51 as though fully set forth herein.

53. Plaintiff has used the service marks "zcity" and "treasuregroup" in commerce, on and in connection with services, to serve a source-identifying function.

54. Plaintiff has thereby acquired common-law trademark rights to the service marks "zcity" and "treasuregroup".

55. Plaintiff's services using the Domains have been visible and available throughout the United States, and Plaintiff has used the service marks "zcity" and "treasuregroup" in interstate and international commerce with American customers. Thus,

10038770.1

TGI is a common-law trademark in the United States.

56. Without Plaintiff's authorization, and in violation of Plaintiff's rights under 15 U.S.C. § 1125(d), Defendants unlawfully registered, trafficked in, and/or used the Domains.

57. The Internet addresses registered, trafficked in, and unlawfully used by Defendants are not confusingly similar to Plaintiff's service marks "zcity" and "treasuregroup," but is identical.

58. TGI's mark was distinctive at the time of Defendants' initial registration, trafficking, and/or use.

59. At all relevant times, Defendants had a bad faith intent to profit from Plaintiff's service marks "zcity" and "treasuregroup."

60. Accordingly, pursuant to 15 U.S.C. § 1125(d)(1)(C), Plaintiff seeks an order from the Court directing Defendants to return the Domains to the ownership and control of Plaintiff.

61. Further, pursuant to 15 U.S.C. § 1117, Defendants are liable to Plaintiff for disgorgement of profits, any damages to Plaintiff, the costs of the action, and statutory damages of $1,000 to $100,000.

62. This is an "exceptional case," pursuant to 15 U.S.C. § 1117, such that Plaintiff is entitled to recover its attorneys' fees from Defendants.

## PRAYER FOR RELIEF ON COUNT III

WHEREFORE, Plaintiff prays for all of the following relief, and for such other and further relief at law or in equity that the Court may deem just and proper:

1. A court order compelling Defendants and/or any relevant domain name registrar to take any and all steps to return the Domains to Plaintiff;

2. The costs of this action;

3. Disgorgement of all of Defendants' profits;

4. Compensation from Defendants for Plaintiff's loss of use of the Domains during the period of Defendants' refusal to return it;

10038770.1

5. Compensation from Defendants for any diminution in the value of the Domains resulting from Defendants' actions during the period of time the Domains have not been returned;

6. Reasonable attorneys' fees;

7. Statutory damages of $100,000; and

8. A permanent injunction against any further misconduct.

## COUNT IV

## FEDERAL CLAIM FOR VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030 (AGAINST DEFENDANT JOHN DOE 1)

63. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-62 as though fully set forth herein.

64. Defendant John Doe 1 accessed Plaintiff's domain registration account with NameCheap without authorization.

65. NameCheap's servers and Plaintiff's account with NameCheap standing alone each constitute a "computer" within the meaning of 18 U.S.C. § 1030(e)(1).

66. The "computers" identified above were used in interstate commerce or communication, and were protected computers within the meaning of 18 U.S.C. § 1030(e)(2)(B).

67. Defendant John Doe 1 knowingly caused the transmission of a program, information, code, or command targeted at protected computers.

68. As a result of such conduct, Defendant John Doe 1 intentionally caused damage, without authorization, to these protected computers.

69. Defendant John Doe 1 intentionally accessed protected computers, without authorization, and as a result of such conduct, has caused damage.

70. The damage caused includes a loss aggregating substantially more than the $5,000 amount required under 18 U.S.C. § 1030(a)(5)(B)(i).

71. Plaintiff has been damaged, and has suffered losses, due to these past wrongs by Defendant John Doe 1.

72. Plaintiff will suffer irreparable harm if Defendant John Doe 1 is allowed to continue to control the Domains.

73. Defendant John Doe 1's conduct violates 18 U.S.C. § 1030(a)(5)(B)(i).

### PRAYER FOR RELIEF ON COUNT IV

WHEREFORE, Plaintiff prays for all of the following relief, and for such other and further relief at law or in equity that the Court may deem just and proper:

1. A court order compelling Defendant John Doe 1 and any relevant domain name registrar to take any and all steps to return the Domains to Plaintiff pursuant to 18 U.S.C. § 1030(a);

2. A permanent injunction against any further misconduct; and

3. Compensatory damages at an amount to be proven at trial, consistent with 18 U.S.C. § 1030(g).

### JURY DEMAND

Plaintiff respectfully demands a trial by jury of all issues so triable.

DATED this 15th day of July, 2025.

**THORPE SHWER, P.C.**

By /s/ Bradley D. Shwer
Bradley D. Shwer
Sara R. Witthoft
*Attorneys for Plaintiff*

11

10038770.1